JESSE LOWE, ROBERT B. CAMP *et al.* plaintiffs in error, *vs.* ROBERT CRAIG, defendant.

JESSE LOWE, JAMES GARMANY, *et al.*, plaintiffs in error, *vs.* GEORGE W. F. CRAIG, defendant.

NOTE. WARNER, C. J., did not preside in this case.

Plaintiffs in error and others purchased from Craig a *fi. fa.* against the Lawrenceville Manufacturing Company, in which they were stockholders, and gave therefor their joint note. One of the makers of the note by importuning Craig, procured the substitution of another promisor in his place. Suit was brought on the note, and the plea was *non est factum*, (by reason of the alteration.) Equity will, under these circumstances, compel the withdrawal of that defense or the payment on the note, of so much of the proceeds or money collected by defendants on the *fi. fa.* by the sale of said Company's property, as will, together with what plaintiff (Craig) had otherwise collected, pay off the note.

Debt. Recovery on original consideration of altered notes. Tried before Judge HUTCHINS.    Gwinnett Superior Court. September Term, 1866.

By consent of counsel these two cases were consolidated and argued together. They are reported as if they had been tried together in the Court below.

Robert Craig was the owner of a *fi. fa.* in his favor against the Lawrenceville Manufacturing Company, (a corporation,) on which there was due, on the 4th November, 1856, $3,109 89¼; and George W. F. Craig was the owner of a *fi. fa.* in his favor against said Company, on which there was due at said date, $1,661 09!

They were about proceeding to make their money out of the effects of said Company, which were ample for that purpose.

Jesse Lowe, James Garmany, Richard Whitworth, John Bankston, Robert B. Camp, Merit Camp, R. D. Winn, John T. Smith, John Mills and James P. Simmons, who were stockholders in said Company, in order to prevent a sale of said effects, took to themselves transfers of said *fi. fas*, and in consideration thereof, delivered to said plaintiffs in *fi. fa.* res-

118 SUPREME COURT OF GEORGIA.

Lowe, Camp, *et al. vs.* Craig—Lowe, Garmany, *et al. vs.* Craig.

pectively, their joint promissory notes for the said amounts due them respectively. The notes were dated the day aforesaid, payable to said Robert Craig and George W. F. Craig respectively, or bearer, and due the 25th December, 1857, with interest from date. Afterwards R. D. Winn sold his stock in said corporation to H. R. Williams, and Williams agreed to take Winn's place on said notes. The said payees suffered said Winn to erase his name, and said Williams to sign his to each of said notes.

In February, 1858, said payees, each in his own name, sued on his note, all of said parties except said Winn,.(and said Whitworth, who was alleged to be dead.) The notes were declared on as altered as aforesaid.

The defendants (except Williams) plead the general issue, and that they were all released by reason of the release of said Winn, and also plead a special *non est factum* founded upon said alteration. This plea was verified by John Bankston, John T. Smith, Jesse Lowe, Merit Camp and Robert B. Camp only.

Plaintiffs amended their declarations as follows:—Robert Craig set out the said agreement and transfer of his *fi. fa.*, and averred that said defendants agreed to pay him therefor $3,109 89. George W. F. Craig set out his transfer, averred that said defendants had collected on his said *fi. fa.*, $710 12 to his use, and therefore owed him that sum.

The cases were carried to the appeal by consent.

Pending the appeal, each of said plaintiffs filed his bill in equity against said defendants, charging that the foregoing facts were true; that said Williams and said Company had each become insolvent since said Williams signed said notes; that said other defendants knew that said alterations in said notes were about to be made and urged no objection thereto, consented to it at the time, and after the alterations were made, acquiesced in the same; and that they subsequently ratified it by taking their portion of money arising from the sale of the effects of said Company, sold under other *fi. fas*, and applying it to the payment in part, of said transferred *fi. fas.* George W. F. charging that said defendants so collected

MILLEDGEVILLE, JUNE TERM, 1867.    119

Lowe, Camp *et al. vs.* Craig—Lowe, Garmany *et al. vs.* Craig.

on the *fi. fa.* which he had transferred, $1,000.00, or other large sum; and Robert Craig charging that they so collected on the *fi. fa.* transferred by him, $2,000.00, or other large sum.

The said complainants further charged, that said Williams had, on the 8th February, 1858, given to each of them a mortgage on his (Williams') individual property, to secure the payment of said notes; that said mortgages had been duly foreclosed, the mortgaged property sold under the mortgage *fi. fas,* and the proceeds, $3,461.00, had been paid to said plaintiffs *pro rata,*—said Robert getting $2,255.80, and said George W. F. Craig getting the balance; and thus Williams had been compelled to pay more than his share of said notes.

The bills prayed discovery etc., and, lest said cases should be lost by the strict rules of the common law, they prayed that the same be restrained, that defendants answer said bills, and have these matters fully settled according to equity.

Demurrers were filed, the ground being that plaintiffs had redress at common law; but no ruling seems to have been had thereon.    It was agreed between the parties that James P. Simmons should not answer the bills, but that either party might examine him as a witness.

The other defendants answered.    They denied having known that said alterations were about to be made, denied having known or consented to them at the time, or having acquiesced in or ratified them.    They admitted all the other facts alleged in the bills, except the charge as to their having received money on said transferred *fi. fas.*    As to that, they said that they did not attempt to enforce said *fi. fas,* but were informed and believed that James P. Simmons, after the Company's effects had been sold by the sheriff on other *fi. fas,* by virtue of an order for distribution of the proceeds, received $1,317.28 thereof, and that said Simmons with their approval, paid out on notes held by Alfred Williams and William Nesbit on the same parties, (except that said Winn did not sign said Williams' note,) all of said money, except the part thereof claimed by said Hiram R. Williams, for which Simmons

was garnisheed by other creditors of said Williams.    They, by way of cross bill, set up that said complainants had received money and securities from which money had been or would be collected, and prayed for a discovery of the same, and that said sums be credited on said complainants' said notes.    They prayed judgment for costs.

GEORGE W. F. CRAIG to said cross bill answered, that on 1st February, 1858, he received on his said mortgage *fi. fa.*, $1,205.58, and that in September, 1858, said James P. Simmons bound himself to pay him "one-eighth part of the note sued on, whether the case shall result for plaintiff or defendants;" that Simmons had paid nothing on said bond, and that he had no other money, nor securities on which money was collectable, connected with said transaction.

ROBERT CRAIG made the same answer, except that the amount received by him was $2,250.80, as aforesaid.

R. B. Camp, John T. Smith and James Garmany having died and *sci. fa.* having been served upon the legal representatives of each, an order was taken in the case of Robert Craig, at March Term, 1866, making Merit Camp, as administrator of R. B. Camp, and William B. Smith, as administrator of John T. Smith, parties defendant; and at September Term, 1866, they (and also Mary C. Garmany, as administratrix of James Garmany,) were made parties defendant in the case of George W. F. Craig.

At September Term, 1866, the common law cases and the equity cases were submitted to the jury together.

Before going to trial, counsel for the defendant objected to trying said cases without the legal representative of James Garmany being made a party.    The Court overruled this objection.    The pleadings being read, said plaintiffs offered as evidence their said promissory notes.    Their introduction was objected to because of said alteration and erasure.    The Court overruled the objection, and the notes were read to the jury.    Attorneys for George W. F. Craig read in evidence an order of the Inferior Court, passed 16th December, 1857, ordering the Sheriff to distribute *pro rata* between certain *fi. fas.*, (including said transferred *fi. fas.*,) the money raised

on a *fi. fa.* of Wiley W. Webb *vs.* Lawrenceville Manufacturing Company, and read in evidence the original *fi. fa.* of George W. F. Craig against said Lawrenceville Manufacturing Company, for $1,575.44 principal, $64.33 interest, and $6.00 cost, judgment 15th September, 1856, with a transfer from the plaintiff to said defendants (in this action) dated 4th March, 1856.

They then swore RICHARD D. WINN, who testified all the facts aforesaid as to the alteration and erasure and transfer of the *fi. fa.;* that Williams was at that time (of erasure, etc.,) worth as much as was witness, if not more ; that in making said alteration he did not, nor did Craig or Williams, so far as he knew, intend fraud against any one.

On cross-examination, he stated that none of the other makers of the note were present at the alteration, nor had any knowledge that it was contemplated, so far as he knew ; nor was any of them guilty of fraud within his knowledge or belief; that it is generally believed that H. R. Williams is insolvent ; that the note was given for the *fi. fa.* and in payment for it, and the *fi. fa.* was controlled (to them) without recourse, but nothing was said between the parties about the note being received in payment or otherwise.

Here complainant George W. F. Craig closed.

#### ROBERT CRAIG'S CASE RESUMED.

Robert Craig's attorneys also examined said WINN, who testified as in the other case, and also said that he and complainant and Williams went to James P. Simmons' office to arrange the papers, (after the agreement for alteration was made,) and the erasure was then made, and Williams then signed the notes, and witness transferred his interest in the *fi. fas.* to Williams.   Simmons was not sitting in the office, but witness thinks he passed through it while they were there.   Witness asked Simmons to write said transfer, which he declined doing, seeming to be in a hurry.   Witness does not know whether Simmons knew what was going on, nor whether any of the other defendants knew that it was to be

done.    There were about forty stockholders in said company when the note was made.

HIRAM R. WILLIAMS was then offered as a witness, and objected to by defendants on account of interest.

The objection was overruled.    He testified substantially the same as Winn had testified, and that he never said anything to defendants about the alteration before it was made; and if he did say anything to them about it, it was after the sale of the property, and that he got none of the money raised on the *fi. fa.*

They then examined JAMES P. SIMMONS, who testified that he was not present when the note was altered, that Winn had told him of his arrangement with Williams, and he told Winn that such alteration would avoid the note, and refused to consent to it.    Witness seeing Winn and Williams coming to his office, left, because suspecting their object, " he did not want to offend Winn by objecting to it, nor did he wish to increase his liability by consenting to it."    Winn asked him to write the transfer, and he refused.    Witness thinks that none of the makers of the note knew of the alteration at the time, but he believes that all knew it before the distribution of the money under the order aforesaid.    The amount received on the *fi. fa.* given for this note was $1,317.28, and was paid out except as before stated (in the answer) to other notes given for other *fi. fas.* against the company : that after witness knew of the alteration, he told plaintiff he might have trouble with it and had better arrange it, that he had given his obligation for one-eighth, (claiming no advantage.)    He thought this his duty—but the other defendants were under no such obligations, and he now had no interest in this suit.    Garmany failed with the company, and died insolvent.

They then introduced the original *fi. fa.* in favor of Robert Craig vs. Lawrenceville Manufacturing Company, for principal $2,578.31¾, interest $499.23, cost $6.00, judgment 15th September, 1856, with the transfer as aforesaid on 4th March, 1856.

The plaintiffs closed.

The defendants introduced no evidence in either case.

After argument, the Court charged the jury, among other things, substantially as follows : If you believe from the evidence that the plaintiffs, without the knowledge or consent of defendants, altered the notes, by erasing the name of Winn and allowing Williams to sign in his stead, with intent to injure or defraud the defendants, then plaintiffs cannot recover either on the notes or original considerations, at law or in equity, both being extinguished by plaintiffs' unlawful acts. But if you believe from the evidence that the alteration was made with no intention to defraud or injure the defendants, was an honest mistake of law and facts and did not injure the defendants, while the note is admitted to be void, the plaintiffs would be entitled to recover on the original considerations : *provided,* the evidence warrants such recovery. The Court read to the jury Section 2793 of the Code of Georgia.

The jury found a verdict for $1,341.48 principal, with interest from the 1st February, 1859, and costs of suit, for Robert Craig, and a verdict for $710.12, with interest from 17th December, 1859, and costs of suit, for George W. F. Craig.

Defendants moved for new trial on the following grounds :

Because the Court erred, 1st. In permitting the cases to be tried without making the legal representative of James Garmany a party.

2d. In allowing the notes read to the jury.

3d. In admitting the evidence of H. R. Williams.

4th. In reading to the jury Section 2793 of the Code, without explaining to them that the notes, having been altered by plaintiffs by the release of one of the makers and the addition of another party, if done without the consent of the other joint makers to it, were thereby rendered void, and therefore the contract is not "capable of execution."

5th. Because the verdict is contrary to the law, to the evidence and the charge of the Court as given, and without evidence to support it in this, that the release of Winn and addition of Williams rendered the note void, and released the

other makers, because the notes having been given in lieu of and in payment for the *fi. fas.*, and so altered without consent of defendants, plaintiffs cannot recover the original consideration paid for the notes, because a Court of Equity, in the absence of fraud on the part of these defendants, cannot give these plaintiffs any relief from the legal effect of said release, because under the verdicts plaintiffs have recovered and will receive a large amount more than is due on the notes sued on, (even if the notes are good and valid,) and because the jury did not find, decree and settle the equities of the several parties before the Court, as should have been done.

The Judge certifies that plaintiffs admitted that the notes were void, and offered to, and he thinks did, release any excess over the true amounts due.

The motion for new trial was overruled.

The bill of exceptions assigns for error the overruling of said motion, reiterating each of the grounds taken therein.

SIMMONS & WINN, J. N. GLENN, attorneys and solicitors for plaintiffs in error.

WM. H. HULL, T. M. PEEPLES, GEORGE HILLYER, N. L. HUTCHINS, Jr., attorneys and solicitors for defendants.

HARRIS, J.

Many points appear to have been raised and decided in the Court below. We deem it unnecessary to consider anything, as the matters in controversy were at length drawn into a Court of Equity, but the ground upon which so manifestly the cases should be decided in that forum. The record discloses the fact that plaintiffs in error and another purchased of the Craigs their executions against the Lawrenceville Manufacturing Company, the plaintiffs being stockholders, and gave their joint notes for the respective purchases. Afterwards, one of the stockholders and makers of said notes (Winn,) prevailed on the Craigs by importunity to allow him (Winn) to substitute in his place on the notes another promis-

sor, and Williams was thus substituted.   When the notes became due, the Craigs commenced suit—the plaintiffs were met by pleas of *non est factum* filed by said stockholders, the pleas alleging the alteration of the notes by the erasure of the name of Winn and substitution of Williams, as a bar to plaintiffs' recovery.   The cases having been placed on the appeal, the Craigs filed their bill for discovery and relief, in which the whole transactions were set forth, and in which they prayed that the defendants below be decreed either to withdraw their pleas of *non est factum,* or that they should pay over to plaintiffs, to be credited on the notes sued on, so much of the proceeds or money collected or received by the stockholders on the executions which they had purchased and which had been raised from the sale of the property of the Manufacturing Company, as with the amounts the Craigs had collected on their mortgage *fi. fas.* against Williams, would, together, pay off and extinguish the notes sued on.   These bills were rightly instituted ; and, especially  as it is by no means sure whether the complainants could have had full relief at law, notwithstanding the almost entire obliteration under our Code of the functions and powers of Courts of Law and Equity as separate jurisdictions.   The equity of the Craigs to the relief prayed is so clear, that the surprise is that for a moment it should have been resisted.

Judgment affirmed.